NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0131n.06

No. 11-5564

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 13, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| CHARLES E. GREEN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, SILER and KETHLEDGE, Circuit Judges.

**SUHRHEINRICH, Circuit Judge.** This is a criminal case involving a Fourth Amendment and sentencing challenge. Plaintiff-Appellee United States of America (the "Government") indicted Defendant-Appellant Charles E. Green ("Green") with conspiring to distribute at least five grams of cocaine, distributing crack cocaine, possessing a firearm as a felon, maintaining a residence for the purpose of distributing crack cocaine, and possessing a firearm in furtherance of a drug-trafficking offense. After a jury trial, Green was convicted of six of the eight counts and sentenced by the district court to a term of 168 months' imprisonment. We AFFIRM.

## I. Background

### A. Narcotics Investigation

Beginning in April 2008, Detective Chad Johnson ("Johnson") of the Marion County Sheriff's Department and a task force officer with the Bureau of Alcohol, Tobacco and Firearms began investigating allegations that Green was involved in drug trafficking activities in South

Pittsburg, Tennessee. At that time, Green had three prior Tennessee drug trafficking convictions and a prior federal firearm conviction. Johnson interviewed individuals familiar with Green's drug-trafficking activities, who reported that Green was selling crack cocaine out of his residence. Additionally, Johnson used two confidential informants to make four controlled purchases of crack cocaine from Green.

### B. Search Warrant

Johnson sought and obtained a search warrant for Green's residence at 1210 South Cedar Avenue, South Pittsburg, Tennessee, on December 29, 2008. The warrant authorized officers to search Green's residence and any persons therein for "crack cocaine, powder cocaine, evidence of crack cocaine manufacturing, scales, smoking pipes, packaging, baggies, other weighing devices, bills, invoices, labels, mail receipts, and other similar records, U.S. currency, phone and banking records, and any other written memorandum relating to the trafficking and manufacturing of crack cocaine." R. 53 at PageID# 133.

Johnson planned to execute the warrant the same day he obtained it, December 29, 2008, but he elected not to when one of the informants reported that Green decided not to have any drugs that day after meeting with his state probation officer at the Sheriff's office and observing the SWAT team preparing for an operation. On December 31, 2008, an informant went to Green's residence to see if Green had restocked drugs. Green told the informant that he "would have some weed later" and proceeded to drive from his home to Chattanooga, Tennessee. R. 72 at PageID# 312. Officers followed Green as he drove to Chattanooga, observing as he stopped at an apartment, went inside, returned to his car shortly after, and then drive back to his residence in South Pittsburg. When Green arrived home, officers detained him and executed the warrant.

From the search of Green's residence, officers found a loaded .38 caliber Smith & Wesson revolver, a box containing several rounds of .38 caliber ammunition, approximately eleven grams of marijuana, and electronic scales. The revolver was inside a camouflage pouch hanging inside Green's bedroom closet. Officers also found $1,800 currency in Green's pockets.

During the search, officers interrogated Green. Officers informed Green of his *Miranda* rights, and Green voluntarily waived those rights and spoke with the officers. Green told the officers that he had driven to Chattanooga to meet with his cocaine source of supply, and to provide him with $2000 cash as partial payment for a four-ounce cocaine transaction that Green had planned to conduct later that evening. Green said that he had been purchasing one to five ounces of cocaine per week for the previous two years. When asked about the revolver found in his residence, Green said, "it's my gun," and explained that he carried it bow hunting to protect from animals in the woods. R. 176 at PageID# 1418.

### C. Motion to Suppress

Green moved to suppress the evidence found in his residence and his statements to law enforcement. In his first motion to suppress, Green argued that the search warrant was obtained in violation of Federal Rule of Criminal Procedure 41(b), that the warrant was not supported by probable cause, and that the search exceeded the scope of the warrant. Green then amended this first motion to suppress, alleging that the warrant had material omissions, for which he requested a *Franks* hearing.

A magistrate judge recommended denying Green's arguments that the warrant was not supported by probable cause and that the search exceeded the scope of the warrant. The magistrate judge determined that Green was not entitled to a *Franks* hearing because he failed to make a preliminary showing that the alleged omissions in the warrant affidavit were made with

the intention of misleading the issuing judge. However, the magistrate judge reserved ruling on the Rule 41(b) issue, and held an evidentiary hearing to resolve that issue.

At the evidentiary hearing, Johnson testified that he had delayed executing the search warrant until he "had new information not contained in the search warrant." R. 72 at PageID#312. In light of that admission, the magistrate judge granted Green leave to amend his motion to suppress again. Green amended his motion to include the claim that probable cause dissipated following the issuance of the warrant but prior to its execution.

The magistrate judge recommended that Green's amended motion to suppress be denied. First, the magistrate judge concluded that the exclusionary rule should not apply to evidence found at Green's residence for failure to comply with Rule 41, because the search warrant would have been issued regardless of compliance with Rule 41 and because the failure to follow Rule 41 was not an intentional effort to avoid its requirements. Second, the magistrate judge found that the police did not violate the Fourth Amendment by executing the warrant because probable cause did not dissipate. Even though Johnson received information that there would not be cocaine at Green's residence, the magistrate judge concluded the search warrant was supported by probable cause at the time it was executed because "the house was used in ongoing drug trafficking and law enforcement received additional information that more drugs would be coming into the house later and because the warrant covered more than just drugs." R. 77 at PageID# 376.

Green accepted the magistrate judge's conclusions on the Rule 41 issue, but objected to his recommendation that the officers did not exceed the scope of the warrant and that probable cause still existed when the officers executed the search warrant. The district court overruled Green's objections to the report and recommendation, and denied his motion to suppress.

## D. Trial and Sentence

Prior to trial, the grand jury issued a superseding indictment, charging Green with eight offenses: one count of conspiring to distribute at least five grams of crack cocaine and at least five hundred grams of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B) (Count One); four counts of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts Two through Five); one count of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Six), one count of maintaining a residence for the purpose of distributing crack cocaine, in violation of 21 U.S.C. § 856(a)(1) (Count Seven); and one count of possessing a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Eight).

Before submitting the case to the jury, Green moved for a directed verdict. On the charge of possessing a firearm in furtherance of a drug trafficking crime (Count Eight), the court granted Green's motion, noting that officers found the revolver inside hunting gear and Green told the agent that he carried it hunting to protect from wild animals. The court submitted the remaining charges to the jury. The jury found Green guilty of every count except for Count Three, which charged Green with distribution of crack cocaine on December 5, 2008.

The probation officer prepared a Presentence Investigation Report. Based on Green's admissions regarding the amount of cocaine he had purchased, the probation officer concluded that Green was responsible for the equivalent of approximately 2.5 kilograms of powder cocaine, and pursuant to U.S.S.G. § 2D1.1(c)(6), calculated a base offense level of 28. The probation officer then applied a two-level enhancement, pursuant to § 2D1.1(b)(1), because Green possessed a firearm in the residence from which he had been convicted of selling crack cocaine.

The resulting total offense level of 30, combined with Green's criminal history of IV, yielded an advisory guidelines range of 135 to 168 months' imprisonment.

Green objected to the Presentence Investigation Report's application of the § 2D1.1(b)(1) dangerous-weapon enhancement and the district court overruled his objection. The district court found that the government had met its burden of demonstrating that Green possessed the gun found in his residence, and concluded that Green had not met his burden of demonstrating that it was clearly improbable that the gun was connected to his drug-trafficking offense. The court reasoned that the gun may have emboldened Green to engage in or continue drug trafficking, that Green had no innocent reason to possess the firearm as a convicted felon, and that the gun was loaded. After considering the other 18 U.S.C. § 3553(a) factors, Green's allocution, and his arguments for a bottom-of-the-Guidelines sentence, the district court concluded that a within-Guidelines sentence of 168 months' imprisonment was appropriate.

## II. Analysis

### A. Denial of Motion to Suppress

Green argues that the district court erred in denying his motion to suppress the evidence obtained as a result of the search of his residence. Green does not challenge the district court's conclusions that the warrant was supported by probable cause at the time it was issued, that it was not obtained in violation of Rule 41, or that he was not entitled to a *Franks* hearing. Thus, Green has waived those arguments on appeal. *See, e.g., United States v. Anderson*, 695 F.3d 390, 402 (6th Cir. 2012) ("An appellant waives an issue when he fails to present it in his initial briefs before this court." (citation omitted)). Green only challenges two aspects of the suppression ruling. First, he argues that the district court erred in finding probable cause had not dissipated between the time the search warrant was issued and the time that it was executed.

Second, Green claims that the district court erred in finding that the search of his residence did not exceed the scope of the warrant.

### 1. Probable Cause Had Not Dissipated

The Fourth Amendment prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. Probable cause exists when, in light of the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Not only must there be probable cause "at the time the judge issues the warrant," but also "at the time officers execute it." *United States v. Archibald*, 685 F.3d 553, 560 (6th Cir. 2012) (citations omitted). When circumstances arise that affect the probable cause for a warrant after its issuance but before its execution, officers should bring that information to the issuing magistrate. *United States v. Bowling*, 900 F.2d 926, 933 (6th Cir. 1990). Nonetheless, even where an officer fails to do so, the fruits of the search executed pursuant to the warrant "are not to be suppressed if this court finds that a neutral magistrate would have determined that probable cause existed to conduct" the search. *Id*.

Green claims that the district court erred in denying his motion to suppress because probable cause had dissipated between the issuance and execution of the search warrant. Green asserts that the search warrant lacked probable cause at the time it was executed because Johnson learned from an informant that Green would not have any cocaine on the day Johnson originally intended to execute the search warrant. According to Green, when Johnson was told that marijuana would be on the premises, the Fourth Amendment required that he report that new

7

information to the issuing magistrate. Because Johnson failed to do so, Green argues the district court should have suppressed the evidence found during the search of his home. We disagree.

As the magistrate judge found, and the district court accepted and adopted, probable cause still existed despite the informant's statement that cocaine was not on the premises. The informant did not provide Johnson with any information that Green had completely discontinued using the premises to sell cocaine. Instead, the informant told Johnson that Green had "determined that he was not going to have any drugs on him that day [*i.e.*, December 29, 2008]" because after meeting with his parole officer and observing the SWAT team prepare for an operation at the Sheriff's office, Green believed it was "too hot" to have cocaine. R. 72 at PageID# 310. Accordingly, when the informant contacted Green on December 31, 2008, the day officers executed the search warrant, Green told him that he "would have some weed" at his residence. *Id*. at PageID# 312. If anything, this statement corroborated that the house was being used to distribute drugs, and that would confirm the basis of probable cause.

Additionally, the search warrant authorized officers to search not only for crack cocaine itself, but also for "evidence of crack cocaine manufacturing" and a variety of items related to the trafficking of crack cocaine including scales, packaging, and currency. R. 53 at PageID# 133. Green's statement that he would not have the drug cocaine on him is thus not dispositive of whether probable cause supporting the search warrant dissipated. When asked about the focus of the search during execution, Johnson noted that "the search warrant is not just for the controlled substance itself, it was for evidence of crack cocaine manufacturing, receipts, phone records, paraphernalia. It didn't just specify that it was to only look for crack cocaine." *Id*. at PageID# 316. The mere fact that Green did not intend to have a particular drug on him on a particular day

8

did not mean that his residence would no longer contain evidence of cocaine or cocaine manufacturing.

Green argues on appeal that Johnson himself admitted at the suppression hearing that probable cause dissipated at the time he conducted the search. Green cites answers Johnson provided during questioning regarding the officers' knowledge that cocaine would not be at Green's residence on the day they executed the search warrant. *See, e.g.*, R. 72 at PageID# 311 ("We found out that there was . . . nothing going to be there at that time."). Reviewing these statements in context, Johnson said "nothing" referring to the drug itself, and not to any evidence of Green's drug-trafficking operation. Because the search warrant covered more than merely cocaine itself, these answers should not be construed as admissions that probable cause had dissipated. Throughout his testimony, Johnson never admitted that probable cause dissipated, maintaining throughout that he had probable cause to search Green's residence at the time he executed the warrant. *See, e.g.*, R. 72 at PageID# 311 ("Q: So, then the probable cause you had was no longer valid? A: No.").[1]

The district court did not err in concluding that probable cause had not dissipated at the time of the warrant's execution.

---

[1] Green also contends that the cases which the court relied upon in ruling that probable cause did not dissipate are distinguishable from this case. Green takes issue with the court's reliance on *United States v. Harris*, 255 F.3d 288 (6th Cir. 2001), and *United States v. Lattner*, 385 F.3d 947 (6th Cir. 2004). Here, Green's argument rests on his contention that Johnson admitted probable cause had dissipated. Because we find Johnson made no such admission, this argument fails. Green also takes issue with the lower court's reliance on *United States v. Micou*, 48 F.3d 1220 (6th Cir. 1995) (finding that probable cause is not extinguished even where half the drugs that officers thought would be present had been removed) because it is an unpublished case and thus is non-binding. This does not take away from its factual similarity or its persuasive authority on the vitality of probable cause despite changes in circumstance.

## 2. **Search Did Not Exceed the Scope of the Warrant**

The Fourth Amendment also requires that warrants include a "'particular description' of the things to be seized." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). An officer with a warrant particularly describing one thing cannot use it to search "for different items of property" if the officer has "the opportunity to obtain a separate warrant." *United States v. Sanchez*, 509 F.2d 886, 889 (6th Cir. 1975). While this court does not inquire into an individual police officer's subjective motivations while searching, *Whren v. United States*, 517 U.S. 806, 814 (1996), we do ensure that the search was reasonable and confined to the limited terms of the warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

Green argues for the first time on appeal that the search of his residence exceeded the scope of the warrant because the officers found and seized marijuana, as opposed to cocaine. Because Green never argued to the district court that the seizure of the marijuana exceeded the scope of the warrant, *see, e.g.*, R. 69 at PageID# 247 (objecting only to the seizure of the cash, ammunition, and firearm), he has waived this argument. *See, e.g.*, *United States v. Scarborough*, 43 F.3d 1021, 1025 (6th Cir. 1994) (holding that issues not raised below are waived and may not be entertained on appeal).

Even had Green's argument been timely raised, it would fail because officers were permitted to seize the marijuana under the plain view doctrine: officers were lawfully present at Green's residence, they had a lawful right to access the marijuana while searching for evidence of cocaine manufacturing, and marijuana's incriminating character was immediately apparent. *United States v. Garcia*, 496 F.3d 495, 512 (6th Cir. 2007).[2] The district court did not err in concluding that the search did not exceed the scope of the warrant.

---

[2] Green also relies on *United States v. Rettig*, 589 F.2d 418 (9th Cir. 1978), in support of his

10

### 3.  Incriminating Statements Should Not Be Suppressed

Finally, Green claims that the district court should have suppressed his incriminating statements to police because they were "fruit of the poisonous tree."  Def. Br. at 39-42.  Because the officers did not find crack cocaine or extensive physical evidence demonstrating Green's alleged distribution activities, the key evidence against him on the drug-related charges was his statement taken by officers during the search of his residence.  As demonstrated above, the search of Green's home was consistent with the Fourth Amendment because it was authorized by a search warrant and executed reasonably.  There was no poisonous tree in this case to bear the fruitful confession, and the district court did not err in declining to suppress it.

In sum, the district court properly denied Green's motion to suppress.  The search of Green's residence was warrant-authorized and supported by probable cause during its execution.  The officers also did not exceed the scope of the warrant by seizing items specifically authorized by it, along with obvious contraband.

### B.  Dangerous Weapon Sentence Enhancement

Green argues that the district court erred in increasing his base offense level pursuant to U.S.S.G. § 2D1.1(b)(1), which provides for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of a drug offense.  He disputes the district court's holding that it was not clearly improbable that the revolver was connected to his drug-trafficking offense.  Green has not carried his burden on this argument.

---

argument that the seizure of marijuana exceeded the scope of the warrant.  Besides being a Ninth Circuit case, thus nonbinding, it presents a different factual scenario.  In *Rettig*, law enforcement acted in bad faith executing a state-issued search warrant for marijuana when their true purpose was to search for cocaine after being denied a federal warrant for that drug.  Where in that case the court found that the search was not "confined to the authorization given by the magistrate" because it was "for purposes and objects not disclosed to the magistrate," here officers searched for items authorized by the warrant–namely evidence of cocaine manufacturing.

A district court's finding that the defendant possessed a firearm during a drug offense is a factual finding subject to the clearly erroneous standard. *United States v. Darwich*, 337 F.3d 645, 664 (6th Cir. 2003). A finding of fact is clearly erroneous "when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

Before a district court can apply a sentencing enhancement under U.S.S.G. § 2D1.1(b)(1), the government must show "by a preponderance of the evidence that the defendant either actually or constructively possessed the weapon." *Darwich*, 337 F.3d at 665 (citation and internal quotation marks omitted). "Constructive possession of an item is the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996) (citation and internal quotation marks omitted).

If the government establishes that the defendant possessed a weapon, a presumption arises that "the weapon was connected to the offense. The defendant must then show that it was clearly improbable that the weapon was connected with the crime." *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002) (citation and internal quotation marks omitted). "A defendant must present evidence, not mere argument, in order to meet his or her burden." *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012).

Green argues that the district court's grant of his directed verdict motion on his 18 U.S.C. § 924(c) charge confirms that it is clearly improbable that he possessed the revolver during the

12

commission of any drug trafficking offense. However, "an acquittal under 18 U.S.C. § 924(c) does not necessarily preclude a sentencing enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)." *United States v. McCall*, 85 F.3d 1193, 1198 (6th Cir. 1996); *see also United States v. Watts*, 519 U.S. 148, 157 (1997). This rule derives from the government's lighter burden of proof for sentencing purposes: "[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense." *United States v. Duncan*, 918 F.2d 647, 652 (6th Cir. 1990). Even though the district court found that no reasonable jury could find that Green possessed a firearm in furtherance of a drug-trafficking offense beyond a reasonable doubt, the district court could have logically found that Green possessed a gun during the commission of his drug trafficking offenses by a preponderance of the evidence.

This court considers various factors in reviewing the question of whether the dangerous weapon enhancement was appropriate, "including the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm." *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002).

Looking to these factors, we find the dangerous weapon enhancement appropriate. First, officers found the revolver inside the residence where Green conducted his crack cocaine trafficking activities and it was thus available to him for protection or deterrence. *See United States v. Bell*, 346 F. App'x 46, 47-48 (6th Cir. 2009) (upholding a § 2D1.1(b)(1) enhancement where "the two firearms were found in a residence that was the situs for drug activity"). Second, a .38 caliber revolver is a type of weapon more commonly associated with drug trafficking than hunting. *See, e.g., United States v. Stafford*, 232 F. App'x 522, 524 (6th Cir. 2007) ("[A] .38 caliber Smith and Wesson revolver . . . do[es] not suggest an innocent purpose, such as hunting

13

or antique collecting.").  Third, the revolver was found fully loaded, indicating it was not merely present for use on occasional hunting trips.  Fourth, Green's alternative explanation, supported by self-serving testimony that he used the .38 caliber pistol "when he went hunting with a bow and arrow because of his concern about wild animals that he might encounter" is inadequate to justify setting aside the district court's finding that Green failed to satisfy the "clearly improbable" standard.  R. 176 at PageID# 1495.  *Moses*, 289 F.3d at 851 ("[Defendant's] self-serving testimony is inadequate to justify setting aside the district court's finding that [he] failed to satisfy the 'clearly improbable' standard.").

The district court's determination regarding the connection between Green's .38 caliber revolver and his offense was not clearly erroneous.  There was no error resulting from the enhancement of Green's base offense level pursuant to § 2D1.1(b)(1).

### III.  Conclusion

The judgment of the district court is affirmed in all respects.