RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────────

ABILIO HERNANDEZ; LAZARO BETANCOURT; NORGE RODRIGUEZ; JOSE PEREZ,

> *Plaintiffs-Appellants*,

*v.*

JASON BOLES; DONNIE CLARK,

> *Defendants-Appellees*.

No. 18-6281

─────────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 4:17-cv-00025—Travis R. McDonough, District Judge.

Argued: July 30, 2019

Decided and Filed: January 30, 2020

Before: SILER, STRANCH, and NALBANDIAN, Circuit Judges.

─────────────────────

## COUNSEL

─────────────────────

**ARGUED:** Drew Justice, JUSTICE LAW OFFICE, Murfreesboro, Tennessee, for Appellants. Amanda S. Jordan, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees. **ON BRIEF:** Drew Justice, JUSTICE LAW OFFICE, Murfreesboro, Tennessee, for Appellants. Amanda S. Jordan, Peako A. Jenkins, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

─────────────────────

## OPINION

─────────────────────

JANE B. STRANCH, Circuit Judge. Tennessee Highway Patrol Trooper Jason Boles pulled Abilio Hernandez over for driving 77 miles per hour in a 70-mph zone. Boles checked

Hernandez and Lazaro Betancourt, the front seat passenger and owner of the car, for warrants. When the warrant check came back negative, Boles asked for and was refused consent to search the car. Trooper Donnie Clark then ran a search for the names of all four occupants of the car through a second, more comprehensive database, which was pending when a K-9 unit arrived. The dog sniffed the outside of the stopped car, alerting to the odor of drugs, but the dog did not alert again when allowed into the car, and the K-9 handler stated that the dog "didn't hit." After checking with their supervisor, the Troopers manually searched the car and found a number of re-encoded gift cards and suspected amphetamines. The four occupants of the car (hereafter called collectively the "Hernandez-Plaintiffs") were arrested and held for months in pre-trial incarceration before all charges were ultimately dropped.

The Hernandez-Plaintiffs filed suit under 42 U.S.C. § 1983, alleging that the Troopers violated the Fourth Amendment by (a) illegally searching the car and (b) unreasonably extending the car stop. The district court granted qualified immunity to the Troopers on the car search based on caselaw existing at that time. At trial, the jury found that the car stop was not impermissibly prolonged. The district court denied the Hernandez-Plaintiffs' Rule 50 motion for judgment as a matter of law. Based on the state of the caselaw at the time of the events in question and the standards governing Rule 50, we **AFFIRM**.

## I. BACKGROUND

### A. The Events of December 17, 2015

Hernandez was driving a Yukon SUV in Coffee County, Tennessee when Trooper Boles clocked him driving 77 miles per hour in a 70-mph zone. Boles waited for Hernandez's car to exit Interstate 24, then pulled him over at the side of a local road at 11:52 a.m. Boles was part of a Tennessee Highway Patrol unit called "Interdiction Plus" that "pull[s] people over for minor traffic offenses and then investigate[s] them for more serious crimes." His unit stops motorists for traffic violations such as minor speeding infractions and then, if there are no "indicators" of criminal activity, "they're given a warning . . . and they're released." In this case, Boles did not plan to issue Hernandez a ticket for speeding if he saw no such indicators; instead he planned only "to issue him a warning citation."

Betancourt, owner of the Yukon, was sitting in the front passenger seat; Norge Rodriguez and Jose Perez were sitting in the back seat. Boles approached the car and requested Hernandez's driver's license, the car's registration, and proof of insurance. Upon learning that Betancourt owned the car, he also requested Betancourt's license. Boles went back to his patrol car and requested a warrant check from the National Criminal Information Center (NCIC). At 11:59 a.m., seven minutes into the stop, the dispatcher told Boles that the NCIC warrant check was negative.

Boles returned to the Yukon, requested Hernandez to step out for questioning, then asked where he was going, who was in the car, whether he had ever been in trouble, and so on. Trooper Donnie Clark arrived during the questioning. Boles then attempted to question the other occupants of the car but was stymied by their limited English. Hernandez and Betancourt repeatedly denied having anything illegal in the car, but Betancourt refused to consent to a car search. Boles told them to wait a few minutes, and Clark requested a K-9 unit.

Boles then obtained driver's licenses from Rodriguez and Perez and ran NCIC warrant checks on them as well. At about 12:13 p.m., dispatch told him that the warrant checks on Rodriguez and Perez were also negative. Around 12:12 or 12:13 p.m., Clark called the Blue Lightning Operations Center (BLOC), a more comprehensive database that Boles did not have access to, to conduct a more detailed check on all four occupants of the car.

While the Troopers awaited the results from BLOC, a dog handler arrived with a K-9 unit at about 12:17 p.m. The police dog sniffed the exterior of the Yukon, alerting to the odor of drugs.[1] The handler then opened the car doors and the rear compartment and let the drug dog into the car to sniff the interior. The dog did not alert once inside the vehicle; instead, it ate some fast food out of a bag. After the dog did not alert inside the car, the K-9 handler shook the hands of all four occupants and gave them a thumbs up. The K-9 handler then told Clark, "Donnie, I'm sorry, Bubba."

---

[1]The dog's handler testified that it alerts to drugs by sitting down. As the Hernandez-Plaintiffs note, the dog cannot be seen sitting down on the Troopers' dashcam video. But, on this video, it is impossible to see what the dog is doing on the far side of the car. In any event, the Hernandez-Plaintiffs did not argue at summary judgment or on appeal that the Troopers lacked probable cause to search the car because the drug dog never alerted.

After the dog failed to alert, Clark received a return call from BLOC. Clark told Boles to call their supervisor and tell him, "We've got a refusal, and the canine didn't hit, and they've got an extensive background—meth." Boles received authorization to conduct a search, and Clark searched the Yukon. Clark found some gift cards in the driver's side door and a large number of gift cards rubber-banded together, as well as a bag containing an unknown substance, in a bag in the back seat. Clark later used a scanner to ascertain that the gift cards had been re-encoded with credit card numbers.

The Hernandez-Plaintiffs were arrested for possession of 370 re-encoded gift cards and 15 grams of a substance believed to be methamphetamine. Hernandez, Betancourt, and Perez were held in pre-trial incarceration for nine months until the criminal charges against them were dismissed. Rodriguez was held in pre-trial incarceration for only three months before the dismissal of charges because he was bailed out.

## B. Procedural History

Both parties moved for summary judgment on the claims of an illegal car search and unreasonable duration of the traffic stop. The district court granted summary judgment to the Troopers on the car-stop claim based on qualified immunity, concluding that "[p]laintiffs have not identified any legal authority clearly establishing, or even hinting at, their right to be free of searches and seizures when a dog alerts to the outside of a vehicle, but not the inside." The court denied both parties' motions on the prolongation of the stop. On the Troopers' motion it held that, viewing the facts in the light most favorable to the Hernandez-Plaintiffs, "[a] reasonable jury could find that Boles unreasonably prolonged the stop in violation of the Fourth Amendment when he began to further question Hernandez after receiving a negative NCIC report." On the Hernandez-Plaintiffs' motion, it held that "viewing the evidence in the light most favorable to Defendants, a reasonable jury could determine that, based on the totality of the circumstances, Defendants diligently pursued the traffic-violation investigation."

At trial, the jury found for the Troopers on the sole remaining claim—that the traffic stop was unreasonably prolonged. The district court denied the Hernandez-Plaintiffs' subsequent

motion for judgment as a matter of law under Federal Rule of Civil Procedure 50. The present timely appeal followed.

## II.  ANALYSIS

### A.  Prolongation of the Car Stop

"We review *de novo* a district court's decision to deny a renewed motion for judgment as a matter of law under Rule 50(b)." *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015) (citation omitted). For the Hernandez-Plaintiffs to succeed on their challenge, they must nonetheless "overcome the substantial deference owed a jury verdict." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007). Like the district court, this court "may grant the [Rule 50] motion 'only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party.'" *New Breed Logistics*, 783 F.3d at 1065 (quoting *Radvansky*, 496 F.3d at 614). We begin with the governing law.

In *Rodriguez v. United States*, the Supreme Court held that officers may not prolong a traffic stop to have a drug dog sniff a car—a crime detecting action not ordinarily incident to a traffic stop—absent independent reasonable suspicion to detain the motorist(s). 135 S. Ct. 1609, 1615–16 (2015). The Court determined that the police violated the Fourth Amendment by detaining Rodriguez for seven or eight minutes after terminating the traffic stop by issuing him a ticket. *Id.* at 1613–16 (rejecting the argument that the prolongation of the stop was permissible because it was *de minimis*). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and attend to related safety concerns." *Id.* at 1614 (citation omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed;" whichever comes first. *Id.*

The Supreme Court opined that the "ordinary inquiries incident to the traffic stop" that do not impermissibly extend a stop include "checking the driver's license [and] determining whether there are outstanding warrants against the driver." *Id.* at 1615 (cleaned up). We have held that checking passengers for warrants and brief questioning are permissible as part of a

traffic stop, *United States v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010), and that summoning a drug dog to sniff a stopped car is permissible as long as it does not "improperly extend the length of the stop," *United States v. Bell*, 555 F.3d 535, 542 (6th Cir. 2009). But *Rodriguez* clarifies that any extension of a traffic stop absent independent reasonable suspicion is improper. 135 S. Ct. at 1615–16. This is a bright-line rule. *Id.*

The Hernandez-Plaintiffs maintain that they are entitled to judgment as a matter of law because, on the undisputed facts, the Troopers unreasonably prolonged the duration of the car stop. They assert that the traffic stop should have ended when the initial warrant check of Hernandez and Betancourt came back negative, or at least when the initial warrant check of the backseat passengers was concluded, and contend that it was unreasonably dilatory to check everyone a second time in another database.

The Troopers maintain that the warrant checks of the four occupants through two separate databases and the questioning of them were "ordinary inquiries incident to the traffic stop" and thus they did not impermissibly extend the stop. The Troopers further contend that because they were still awaiting the results of the background check from BLOC at the time that the drug dog first sniffed the car, calling the dog to the scene did not prolong the traffic stop.**[2]**

The issue here is whether, at the time of the dog sniff, the stop had been prolonged beyond the duration of the tasks incident to the initial stop or past the time reasonably required "to address the traffic violation that warranted the stop." *Rodriguez,* 135 S. Ct. at 1614. In other words, the Hernandez-Plaintiffs need to show either that the second warrant check of the occupants was not "tied to the traffic infraction" or that the traffic stop "reasonably should have been" already completed. *Id.* This is the type of circumstance-specific Fourth Amendment inquiry that, in the civil context, is generally reserved to the jury, as it was here. *See, e.g.*, *Gardenhire v. Schubert*, 205 F.3d 303, 315–18 (6th Cir. 2000) (holding that whether the police had probable cause was a question for the jury). For the Hernandez-Plaintiffs to prevail on their

---

**[2]**The Troopers also argued at summary judgment that, even if the traffic stop was unreasonably extended, they had reasonable suspicion to detain the Hernandez-Plaintiffs based on Hernandez's demeanor and answers to Trooper Boles's questioning. But the Troopers did not make this argument in their response to the Rule 50 motion or on appeal. It is therefore forfeited.

Rule 50 motion, they must show that under the facts of this case, running a check of a second database or waiting 20 minutes to call for a second warrant check unreasonably extended the traffic stop *as a matter of law.*

The Hernandez-Plaintiffs argue that the stop was legally improper because the Troopers "were using a traffic stop as a pretext to fish for evidence of other crime." It is well established, however, that police officers may stop a vehicle that commits a traffic violation and look for evidence of a crime, even if the traffic stop is merely a pretext and they do not have an independent reasonable suspicion of criminal activity. *See Whren v. United States*, 517 U.S. 806, 813, 819 (1996); *see also United States v. Everett*, 601 F.3d 484, 495 n.12 (6th Cir. 2010) ("[I]t is the objective conduct of the officer which the diligence standard measures; his subjective intent or hope to uncover unrelated criminal conduct is irrelevant."). To be sure, the Hernandez-Plaintiffs were free to argue to the jury that the Troopers impermissibly extended the traffic stop by checking a second database or waiting 20 minutes to call BLOC because they were trying to uncover evidence of a crime. But Trooper Boles's admission that he was interested in ferreting out crime rather than merely issuing traffic tickets does not alter the Fourth Amendment analysis. It remains the case that an officer's subjective intent is generally immaterial; the stop, by contrast, is unlawful if it is prolonged beyond the duration of tasks incident to the traffic stop or "beyond the time reasonably required" to address the traffic violation. *Rodriguez*, 135 S. Ct. at 1614–15 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)); *see also Bell*, 555 F.3d at 541–42 (holding that officers may pursue unrelated matters during a traffic stop, such as calling a drug dog to the scene to sniff the car, while they are waiting for the results of a warrant check, as long as they do not impermissibly prolong the stop).

The Hernandez-Plaintiffs argue that the traffic stop was unreasonably prolonged because the initial warrant check was completed 18 minutes before the drug dog showed up, the NCIC warrant check of the backseat passengers was completed four minutes beforehand, and "[c]hecking BLOC was a way to kill time. Even assuming that it had any valid purpose at all, the Troopers did not do it diligently" because they waited until 20 minutes into the stop to call BLOC. Certainly, the jury could have found that it was unreasonable to continue to detain the Hernandez-Plaintiffs after the initial warrant check of Hernandez and Betancourt came back

negative because that was not necessary to carry out the traffic stop—especially given that no ticket was being written—or that the Troopers were unreasonably dilatory in waiting 20 minutes to call BLOC. But the Hernandez-Plaintiffs cite no authority mandating such a determination as a matter of law. And though the delay caused by checking two different databases is troubling, the Hernandez-Plaintiffs point to no bright-line rule that officers are limited to checking one database for warrants during a traffic stop. Whether the traffic mission was (or should have been) over by the time the dog arrived was a question properly submitted to the jury.

In sum, the jury assessed all the facts and arguments and determined that the Troopers did not unreasonably prolong the traffic stop. The district court correctly determined that the question of whether the Troopers impermissibly prolonged the traffic stop was reserved to the jury. Drawing all reasonable inferences in favor of the Troopers, as we must, we cannot say that the Hernandez-Plaintiffs have met the high burden of showing that the jury's verdict was unreasonable as a matter of law. We therefore affirm the denial of the Hernandez-Plaintiffs' Rule 50(b) motion for judgment.

## B. The Car Search

The Hernandez-Plaintiffs also argue that the district court erred in granting partial summary judgment to the Troopers on the ground that the car search did not violate clearly established law. "We review a district court's grant of summary judgment *de novo*." *Brown v. Lewis*, 779 F.3d 401, 410 (6th Cir. 2015) (citation omitted). Granting summary judgment "is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' It is not appropriate if . . . a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting Fed. R. Civ. P. 56(a)). In reviewing a grant of summary judgment, this court "must view all evidence, and draw all reasonable inferences, in the light most favorable to the [non-moving party]." *Id.*

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Goodwin v. City of Painesville*, 781 F.3d 314, 320–21 (6th Cir. 2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). At summary

judgment, qualified immunity must be denied and the case sent to the jury if the court finds that "there are genuine issues of material fact as to whether [the Officers] violated [the plaintiff's] Fourth Amendment rights in an objectively unreasonable way and . . . those rights were clearly established at the time of [the plaintiff's] arrest such that a reasonable officer would have known that his conduct violated them." *Id.* at 321 (alterations in original) (quoting *St. John v. Hickey*, 411 F.3d 762, 768 (6th Cir. 2005)). Though courts may answer these two questions "in either order," *id.*, we address first whether a constitutional violation occurred and then whether there was a violation of the Hernandez-Plaintiffs' clearly established rights.

1. <u>Constitutional Violation</u>

At issue is whether the Troopers violated the Fourth Amendment by manually searching the Yukon even though the drug dog did not alert to the car's interior. It is blackletter law that the police can lawfully search a car without a warrant if they have probable cause. *See, e.g.*, *United States v. Ross*, 456 U.S. 798, 809 & n.11 (1982) (collecting cases). The Troopers articulate only one basis for probable cause to search the car: the drug dog's alert to the exterior. And the Hernandez-Plaintiffs do not dispute that the Troopers had probable cause to have the dog climb into and sniff the interior of the car following its initial alert. So, the question is whether the Troopers *still* had probable cause to conduct a manual search after the dog failed to alert to the interior of the car.

The Hernandez-Plaintiffs argue that the Troopers did not have probable cause for this search because, "under the specific circumstances, the dog alert was unreliable." They rely on *Florida v. Harris*, 568 U.S. 237 (2013), for the proposition that "officers must look at the specific circumstances before concluding that an alert has produced probable cause." The Troopers respond that, even if there was a constitutional violation, they are entitled to qualified immunity because the Hernandez-Plaintiffs cannot "point to any legal authority clearly establishing that a drug dog's alert to the outside but not the inside of a vehicle would not provide probable cause to search the vehicle."

The Hernandez-Plaintiffs' reliance on *Harris* does not resolve the legal issue. *Harris* stands for the proposition that a dog's alert only provides probable cause if, in "controlled

settings," the "dog performs reliably in detecting drugs." *See* 568 U.S. at 248. The *Harris* Court did leave open the possibility that even if "a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions." *Id.* at 247. But that does not cover the situation here—where a dog first alerts to the exterior and then fails to alert to the interior of a car. The unrebutted evidence in the record showed that the drug dog was generally reliable: The dog's handler testified at his deposition that "she didn't do any false alerts since the time I got her till the time I retired." And there is nothing in the record to suggest that the circumstances of the dog's alert undermine the dog's reliability in the sense meant by *Harris*.

The issue is governed by our precedent addressing the circumstances under which probable cause dissipates. We held almost thirty years ago that the information acquired from a fruitless search can dissipate probable cause and render a subsequent search illegal. *See United States v. Bowling*, 900 F.2d 926, 932 (6th Cir. 1990). In *Bowling*, officers searched a trailer home pursuant to a search warrant a few hours after officers had conducted a consent search of the premises and found nothing. *Id.* at 930–31. We "agree[d] with [the] proposition" that "where an initial fruitless consent search dissipates the probable cause that justified a warrant, new indicia of probable cause must exist to repeat a search of the same premises." *Id.* at 932. Nonetheless, we declined to suppress the evidence found during the second search because, though the consent search "was detailed at points, it was not overall as intricate as the search under the warrant." *Id.* at 934. In fact, incriminating evidence was found in a car behind the trailer, which was not even searched during the consent search. *Id.* Thus, *Bowling* concluded, "the consent search here was not so broad as to dissipate probable cause." *Id.*

Other circuits to treat the issue agree that the acquisition of new information can dissipate the probable cause for a search. *See United States v. Dalton*, 918 F.3d 1117, 1128–29 (10th Cir. 2019) ("Like the Sixth Circuit in *Bowling*, we are persuaded that probable cause becomes stale when new information received by the police nullifies information critical to the earlier probable cause determination . . . ."); *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574–75 (9th Cir. 2005) (holding that any probable cause to arrest the defendant was dissipated after a strip search

revealed that he did not have drugs); *Bigford v. Taylor*, 834 F.2d 1213, 1218–19 (5th Cir. 1988) (holding that the police "may not disregard facts tending to dissipate probable cause").

We have also held that the failure of a drug-sniffing dog to alert to a car dispels suspicion. *See United States v. Davis*, 430 F.3d 345, 356 (6th Cir. 2005) (holding that officers no longer had reasonable suspicion to detain a motorist on suspicion of drug possession and call a second drug-sniffing dog to the scene after the first drug-sniffing dog did not alert). Indeed, *Davis* stated that "[o]nce the drug-sniffing dog was brought to the scene and failed to alert positively . . . , the officers' suspicions that Davis was in possession of narcotics were dispelled." *Id.*

Based on *Bowling* and *Davis*, a reasonable jury could find in the Hernandez-Plaintiffs' favor. *Bowling* stands for the proposition that a fruitless search negates probable cause, if it is sufficiently thorough, and *Davis* stands for the proposition that a drug dog's failure to alert dispels suspicion. Viewing the evidence in the light most favorable to the Hernandez-Plaintiffs and drawing all reasonable inferences in their favor, a jury could determine that the dog's fruitless sniffing of the car interior was sufficiently thorough to dissipate the probable cause to search provided by its initial alert. The dog's handler opened all four of the SUV's doors and the rear compartment, allowing the dog to sniff the whole interior, and the dog spent several minutes inside the car. After the dog failed to alert, moreover, the dog's handler shook the occupants' hands, gave them a thumbs up, and apologized to Trooper Clark for the dog's failure to alert. These actions suggest that the handler felt the dog had cleared the Hernandez-Plaintiffs. Then, when telling Boles what information to relay to their supervisor, Clark said that "the canine didn't hit." A reasonable jury could conclude that the dog's failure to alert inside the car dispelled the probable cause provided by its initial alert to the exterior, and the Troopers could therefore no longer lawfully search the car.

The Hernandez-Plaintiffs argue that the district court should have awarded them summary judgment. In this particular situation, however, a dispute of material fact remained for the jury to resolve. In his deposition, the dog's handler said that, although the drug dog had "been in parts of all of [the car]," the dog "had not searched it all" because "she got playing with that food bag." He testified that he had cut the search short because he was "embarrassed" that

the Hernandez-Plaintiffs were "laughing at [the] dog" for focusing her attention on the food. Viewing the evidence in the light most favorable to the Troopers, a reasonable jury could have concluded that, because the first search of the car by the dog was not sufficiently thorough, it did not dissipate the probable cause justifying a second, manual car search. *See Bowling*, 900 F.2d at 934 (holding that "the consent search . . . was not so broad as to dissipate probable cause"). We therefore turn to whether the law was clearly established.

### 2. Clearly Established Right

This brings us to the clearly-established prong of the qualified immunity inquiry. "In inquiring whether a constitutional right is clearly established, we must 'look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.'" *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566–67 (6th Cir. 2016) (quoting *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993)). At the time of the manual car search, it was clearly established that (a) probable cause to search an area is dissipated when a sufficiently thorough prior search has been fruitless and (b) the failure of a drug-sniffing dog to alert dispels suspicion. *See Davis*, 430 F.3d at 356; *Bowling*, 900 F.2d at 932–34.

But, to overcome qualified immunity, the clearly established law must be specific enough "to put a reasonable officer on notice that the conduct at issue was unconstitutional." *Lewis*, 779 F.3d at 417. "[T]here need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional." *Goodwin*, 781 F.3d at 325 (quoting *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (alteration in original)). Nevertheless, the relevant principles should be defined at a "high 'degree of specificity,'" especially in the Fourth Amendment context. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam)). Because probable cause "cannot be 'reduced to a neat set of legal rules'" and is "'incapable of precise definition or quantification,'" police "'officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Ziglar v. Abbasi*,

137 S. Ct. 1843, 1866 (2017).  Thus, in the Fourth Amendment context, "[w]hile there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular [search] 'beyond debate.'"  *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, neither *Bowling* nor *Davis* is specific enough to clearly establish that the manual car search was illegal.  *Bowling* establishes that a fruitless search can dissipate probable cause and *Davis* establishes that the failure of a drug-sniffing dog to alert at all dispels suspicion.  But neither governs the unusual circumstances of this case, where the same drug-sniffing dog first alerted and then failed to alert to a car during a subsequent search.  At the time of these events, a reasonable officer would not have been on notice that the drug dog's failure to alert again to the interior of the car was the kind of new information that dissipated the probable cause provided by its initial alert to the car exterior.  This case provides such notice for future searches.  Accordingly, we affirm the district court's grant of qualified immunity to the Troopers.

## C.  Recoverable Damages for an Illegal Search or Seizure

This brings us to one more issue addressed by the parties—whether damages are recoverable for pre-trial incarceration stemming from an illegal search or seizure, a question of first impression in this circuit.  Because there is no basis for liability in this case, this issue is pretermitted.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of the Hernandez-Plaintiffs' Rule 50(b) motion and the district court's grant of partial summary judgment to the Troopers on the car-stop claim.