NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0381n.06

Case No. 22-3840

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Aug 16, 2023<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| ALEJANDRO DANIEL, JR., | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: COLE, CLAY, and KETHLEDGE, Circuit Judges.

COLE, Circuit Judge. Alejandro Daniel, Jr. appeals the denial of his motion to suppress evidence, arguing that the relevant search warrant lacked probable cause and contained a material omission. But because officers reasonably relied on the search warrant in good faith, we affirm.

## I. BACKGROUND

On July 22, 2020, agents with the Miami Valley Bulk Smuggling Task Force were surveilling a hotel in an area allegedly frequented "by persons involved in drug trafficking and money laundering for various drug trafficking organizations." (Warrant Aff., R. 19-1, PageID 76.) Agents noticed a silver Dodge Charger with a California license plate in the hotel parking lot and decided to check the vehicle's plate number for recent border crossings; the vehicle entered the United States from Mexico on July 14, 2020, occupied by Jermaine Bounds and Daniel. Law enforcement databases indicated that Daniel was previously caught crossing the border with a user-amount of marijuana. Bounds had a prior drug-related offense on his record and an active arrest warrant for a traffic violation. Neither Bounds nor Daniel were registered as guests at the hotel.

At some point during the surveillance, agents saw a woman, later identified as Alexis Iniguez, remove pet supplies for her dog from the Dodge Charger's trunk. Iniguez was on the hotel guest list, and research revealed that she had crossed the Mexico-U.S. border several times before, most recently in 2019. Agents later saw Iniguez, her dog, and two men—ultimately confirmed to be Bounds and Daniel—approach the Dodge Charger. Iniguez and her dog got into the Dodge Charger while Bounds and Daniel got into a nearby Kia Soul, and both cars departed.

The agents followed the two cars into Dayton, where they stopped at the intersection of Fairview Avenue and Mayfair Road. Iniguez parked the Dodge Charger on Mayfair while Bounds parked the Kia Soul on Fairview near the intersection so that someone sitting in the Kia Soul could observe the parked Dodge Charger. Daniel exited the Kia Soul and approached the Dodge Charger, motioning for Iniguez to get out. Daniel then took the car key from Iniguez and got into the car, "reaching into" the front passenger area, then the driver's area. Daniel then locked the car with the key fob and began walking north on Mayfair with Iniguez and her dog in tow. Agent Richard Miller followed.

Eventually, Daniel and Iniguez noticed Miller following them and split up. When approached by agents, Bounds declined to answer any questions or provide identification, while Daniel provided identification but denied having been in either the Dodge Charger or the Kia Soul and said that he "would love to help but doesn't know." (*Id.* at PageID 77–78.)

Iniguez proved more talkative. She told Miller that Daniel had offered to pay her an indeterminate sum to drive the Dodge Charger from California to Dayton, and she needed the money to pay off her credit card debt. So on July 19, she picked the Dodge Charger up in California from Bounds and Daniel, who also asked her to rent another car, the Kia Soul, so they could follow her. The group then met at a hotel in Arizona on July 20. From there, Bounds and

Daniel directed Iniguez to drive the Dodge Charger to Dayton. They arrived in Dayton in the early hours of July 22, where Iniguez rented two hotel rooms for the group under her name.

Iniguez told Miller that "she thought this trip was illicit" but needed the money. (*Id.* at PageID 78.) She also stated that she did not know who owned the Dodge Charger but believed that Daniel drove it regularly. And she gave Miller permission to search both the Dodge Charger and the hotel rooms. The search of the rooms turned up a "user amount of high-grade marijuana and paraphernalia" in the room where Bounds and Daniel had stayed. (*Id.* at 78–79.) The search of the Dodge Charger lasted "maybe less than ten minutes" and did not result in discovery of any contraband. (Hr'g Tr., R. 22, PageID 116–17.) Despite discovering no evidence, agents decided to tow the car.

Later that day, Agent Jason Leslie provided an affidavit to an Ohio state court judge describing the individuals' history of border-crossings and any prior offenses; agents' observations at the hotel; the group's drive to Dayton; the agents' observations at the Fairview-Mayfair intersection; Iniguez's statements to Miller, including her purported consent to search the car and hotel rooms; and the marijuana found in the hotel room. The warrant did not state that a search of the Dodge Charger had failed to turn up contraband.

Finding that the affidavit provided probable cause that evidence of money laundering or drug trafficking could be found in the vehicle, a state court judge issued the warrant, authorizing agents to search the Dodge Charger for illicit drugs as well as any related paraphernalia, supplies, and records. The search led to the discovery of three kilograms of a drug mixture suspected to contain fentanyl or heroin, which had been stored in a secret "aftermarket" compartment within the dashboard of the car. (Plea Agreement, R. 37, PageID 222.)

Daniel was indicted for conspiracy to possess with intent to distribute one kilogram or more of a controlled substance containing heroin, in violation of 21 U.S.C. §§ 841(a)(1)(A) and (b)(1)(A), and 846. Daniel moved to suppress the evidence found in the Dodge Charger on the grounds that the search and seizure of the car were not supported by probable cause and requested an evidentiary hearing.

After an evidentiary hearing and supplemental briefing from the parties, the district court denied the motion, concluding that the warrant was supported by probable cause. Daniel subsequently entered a guilty plea pursuant to an agreement that allowed him to appeal the denial of his suppression motion. This appeal follows.

## II. ANALYSIS

In an appeal from a denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Waide*, 60 F.4th 327, 335 (6th Cir. 2023).

The Fourth Amendment prohibits "unreasonable" searches and seizures and requires that search warrants be supported by "probable cause." U.S. Const. amend. IV. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44, n.13 (1983)).

If police obtained evidence via a search that lacked probable cause, courts may suppress that evidence under the exclusionary rule. *Davis v. United States*, 564 U.S. 229, 236 (2011). But the exclusionary rule does not apply where police relied in good faith on a warrant later found deficient, so long as their reliance was objectively reasonable. *United States v. Leon*, 468 U.S. 897, 922–24 (1984). So where, as here, officers discovered the evidence after obtaining a warrant,

even if the warrant lacked probable cause, the good-faith exception precludes suppression unless: (1) the warrant affidavit includes statements that the affiant knew or should have known were untrue; (2) "the issuing magistrate wholly abandoned his or her judicial role;" (3) the warrant affidavit is "bare bones" or lacks any indicia of probable cause; or (4) "the warrant is so facially deficient" that it would be unreasonable for police to think it was valid. *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

In his brief, Daniel argued that the good-faith exception should not apply to the warrant in this case because the underlying affidavit contained two material omissions that amounted to untruths and otherwise lacked sufficient indicia of probable cause. But at argument, Daniel's counsel conceded that the "crux of this case" is whether one particular purported omission was significant enough to change the probable-cause and good-faith analyses, so we focus on that specific omission.

Material omissions in a warrant affidavit can defeat application of the good-faith exception, but "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997); *see also United States v. Ardd*, 911 F.3d 348, 351–53 (6th Cir. 2018) (analyzing statements alleged to constitute falsehoods or material omissions in the good-faith exception context). To show that the good-faith exception is inapplicable because of a material omission, the defendant must show that the omission rises to the level of a "deliberate falsehood" or "reckless disregard for the truth." *Atkin*, 107 F.3d at 1217 (quoting *United States v. Bonds*, 12 F.3d 540, 568 n.26 (6th Cir. 1993)).

To start, the affidavit contains the following information about the car search:

Iniguez stated she would give Agents consent to search the Charger and her hotel rooms . . . . Iniguez stated Daniel still had the keys but granted Agent [Miller] permission to use a vehicle access tool to conduct the consent search. Iniguez stated to Agent Miller that she does not know who the owner of the Dodge Charger was, but she knows Alejandro Daniel, Jr. to drive the vehicle on a regular basis. After the consent search, Iniguez agreed to grant consent to search her two hotel rooms . . . . Inside the hotel room[] where Daniel and Bounds were staying[,] Agent Miller located a[] user amount of high-grade marijuana and paraphernalia. Agents did not locate contraband in Iniguez's room.

(Warrant Aff. R. 19-1, PageID 78–79.)

The affidavit notes that the hotel room search occurred "[a]fter the consent search." (*Id.* at PageID 78). Given the preceding statements, this reference to a consent search can only refer to the search of the Dodge Charger. And reading further, the affidavit discloses the contraband found in the hotel room, so a reader could understand the affidavit's bare mention of a consent search to suggest that nothing was found in the car. This also comports with Leslie's testimony at the evidentiary hearing, where he stated that he "thought that . . . [he] had mentioned that search had taken place," but that it was "very possible" he had failed to state that officers found no contraband. (Hr'g Tr., R. 22, PageID 119.)

In context, it is not clear that the affidavit's failure to clarify that nothing was found in the car qualifies as an omission, let alone a material one: Failing to state that contraband was found in the car search suggests—if obliquely—that nothing was found, particularly given that when officers found contraband in the hotel room, it was stated in the affidavit. So including this information would have only bolstered an accurate impression, rather than correcting a misimpression; therefore, failing to clarify the search's futility does not rise to the level of a falsehood or a reckless disregard for the truth so as to avoid the good-faith exception. *See United States v. Asgari*, 918 F.3d 509, 516 (6th Cir. 2019).

Additionally, Daniel has not identified, nor are we aware of, a case where a similarly vague statement in an affidavit qualified as a material omission that would defeat application of the good-faith exception. On the contrary, in at least one case, we said that an unclear statement that could be read in two ways (one favorable to the defendant, one unfavorable) did not constitute a falsehood or material omission that would overcome the good-faith exception. *Ardd*, 911 F.3d at 352–53.

Nor does our case law support Daniel's contention that the initial search's fruitlessness caused probable cause to wane such that officers could not reasonably rely on the search warrant. True, officers' awareness of an initial, fruitless search of the location is "relevant to a determination of whether they relied on the warrant in good faith." *United States v. Bowling*, 900 F.2d 926, 932 (6th Cir. 1990). But it is not dispositive if, under the specific facts of the case, failure to mention the initial search's lack of results would not have led the judge issuing the warrant to a different conclusion. *See id.* at 934.

Such is the case here. Aside from the fact that context clues indicate that nothing was found in the car, the initial search here was akin to the search in *Bowling*—a fifteen-minute search of a trailer—where we affirmed the denial of a motion to suppress. *Id.* Like in *Bowling*, the search of the Dodge Charger was brief, lasting at most ten minutes, and the evidence was ultimately found in a location not originally searched, a hidden "aftermarket" compartment. So, as in *Bowling*, the "search here was not so broad as to . . . imply bad faith." *Id.*; *see also United States v. Green*, 554 F. App'x 491, 495–97 (6th Cir. 2014) (affirming the denial of a motion to suppress where the omitted fact, if disclosed, would not have changed the outcome of the issuing judge's probable-cause analysis).

By contrast, in cases where brief searches have caused probable cause or reasonable suspicion to wane, officers received some kind of affirmative indication that there was no contraband in the vehicle, such as with a drug-sniffing dog. *See, e.g.*, *United States v. Davis*, 430 F.3d 345, 356 (6th Cir. 2005) (finding that officers' reasonable suspicion that the defendant's car held contraband was dispelled after the "highly trained" drug-sniffing dog at the scene failed to alert); *see also Hernandez v. Boles*, 949 F.3d 251, 260 (6th Cir. 2020) ("A reasonable jury could conclude that the dog's failure to alert inside the car dispelled the probable cause provided by its initial alert to the exterior"). There was no affirmative indication here disproving the existence of contraband in the car, putting this case closer to *Bowling* and *Green*, where we affirmed denials of motions to suppress because omitted information would not have altered the probable-cause calculus.

Daniel has not demonstrated that the omission of the initial car search's fruitlessness from the affidavit amounted to a deliberate falsehood or showed reckless disregard for the truth. Therefore, even if the warrant lacked probable cause, the good-faith exception applies. And although the district court affirmed on the basis of probable cause and did not apply the good-faith exception, we may affirm on any ground supported by the record. *Boler v. Early*, 865 F.3d 391, 414 (6th Cir. 2017); *see also United States v. Gilbert*, 952 F.3d 759, 762–63 (6th Cir. 2020) (affirming based on the good-faith exception where the district court had resolved a motion to suppress on probable-cause grounds).

## III. CONCLUSION

For the foregoing reasons, we affirm.