RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

GARRETT M. LOTT,

*Defendant-Appellant*.

No. 18-6066

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:17-cr-00052-1—Robert E. Wier, District Judge.

Argued:  October 24, 2019

Decided and Filed:  April 1, 2020

Before:  CLAY, STRANCH, and MURPHY, Circuit Judges.

_____

### COUNSEL

**ARGUED:**  Jason E. Williams, WILLIAMS & TOWE LAW GROUP, London, Kentucky, for Appellant.   R. Nicholas Rabold, UNITED STATES ATTORNEY'S OFFICE, London, Kentucky, for Appellee.  **ON BRIEF:**  Jason E. Williams, WILLIAMS & TOWE LAW GROUP, London, Kentucky, for Appellant.   R. Nicholas Rabold, UNITED STATES ATTORNEY'S OFFICE, London, Kentucky, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

### OPINION

_____

JANE B. STRANCH, Circuit Judge.   Garrett M. Lott was stopped by Kentucky State Trooper Michael King on Interstate-75 for traveling in the left lane without passing other cars.

A search of his car turned up heroin and other drugs.  Lott was indicted on a single count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), and the district court denied Lott's motion to suppress the fruits of the vehicle search.  At issue on appeal is the district court's conclusion that (1) the traffic stop was initiated constitutionally, and (2) the stop was not impermissibly extended.  We **AFFIRM**.

## I.  BACKGROUND

On August 10, 2017, Lott was pulled over for committing a left-lane infraction while traveling southbound on I-75 near Livingston, Kentucky.  *See* Ky. Rev. Stat. §§ 189.300, 189.340(7), and 189.390(7).  Trooper King, a member of the State Police Interdiction Team, was stationed in the median of the highway and saw Lott's vehicle slow down as it came into view.  As Lott drove by, he "coasted," or let off the gas, and King looked through the tinted windows to see Lott driving with "arms locked out."  Based on his training, King interpreted the position of Lott's hands on the steering wheel and his straight arms to be a sign of nervousness.  King followed Lott for three-fourths of a mile in the left lane while vehicles passed on the right.  King activated his emergency equipment and Lott pulled over.

During the initial roadside exchange, King thought Lott was "extremely nervous beyond that of a normal traffic stop" and "visibly shaken."  King told Lott that he was not going to issue a traffic citation for driving in the left lane but returned to his police vehicle to run Lott's driver's license through a mobile-data-terminal computer search for outstanding warrants.  King also flagged down Trooper Kyle Reams, who had a K-9 in tow.  Based on Lott's nervousness and the proximity of his car to the roadway, King asked him to step out of the vehicle and Lott complied.  King did not go back to the patrol car to check the status of the warrant search: "I don't think I went back to my car to actually see if the results had came [*sic*] back yet.  I was still in the middle of trying to figure out why he was so nervous, the reason for him being nervous."  At oral argument, the Government stated it was possible that the warrant search was completed during conversation at the rear of Lott's vehicle, but that King did not go back to check.

King questioned Lott outside the vehicle, and Lott denied possessing a large amount of currency or drugs.  King then asked for Lott's consent to search his vehicle and Lott refused.

King told Lott that "we have a K-9, we're going to utilize the K-9." According to King, Lott then said, "I have a little bit of marijuana in the console of my car." Reams then had the K-9 perform a "free air sniff" around the vehicle and it alerted on the driver's side door and the passenger door. King located the marijuana in the console and proceeded to search the entire vehicle. In the trunk, King found heroin, other drugs, and money. The Troopers estimated that 5 to 10 minutes elapsed between the initial stop and the free air sniff.

Lott was arrested and charged with violating 21 U.S.C. § 841(a)(1). He filed a motion to suppress the fruits of the vehicle search and a suppression hearing was held on December 8, 2017, before the magistrate judge. The magistrate judge issued a Recommended Disposition concluding that the search passed constitutional muster. The district judge issued a Memorandum Opinion and Order incorporating the Recommended Disposition and denying Lott's motion to suppress. On June 25, 2018, Lott entered a conditional plea of guilty before the district court, admitting culpability but preserving the right to appeal the suppression ruling.

## II. ANALYSIS

### A. Standard of Review

"When reviewing [a] district court's ruling on a motion to suppress, we review findings of fact for clear error and legal conclusions de novo." *United States v. Jackson*, 682 F.3d 448, 452 (6th Cir. 2012) (citing *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007)). Where, as here, "the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (quoting *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003)).

### B. Discussion

#### 1. Probable Cause for the Traffic Stop

Lott contends that the factual record and the testimony developed at the suppression hearing demonstrate that the traffic stop initiated by Trooper King was not supported by probable cause. He asserts that the stop was "pretextual and/or constitutionally prohibited, thus requiring the suppression of the evidence obtained." The Government contends that pretext is irrelevant.

The applicable legal framework is well established. "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) (quoting *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996)). "When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)); *see also United States v. Warfield*, 727 F. App'x 182, 188 (6th Cir. 2018).

Here, Lott does not dispute that he was observed traveling in the left lane in violation of Kentucky law. Instead, his arguments are based on the assertion that King's traffic stop was "purely pretextual." As the district court noted: "The Defendant does not actually object to the fact that he was in the left lane impeding traffic, but instead makes various allegations related to Trooper King's inconsistent testimony, which he argues is indication that the stop was pretextual." Lott's argument is unavailing. Probable cause to conduct a traffic stop is conferred where, as here, an officer observes a motorist violate a traffic law. *See United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). King had probable cause to conduct the initial stop.

### 2. Probable Cause for the Traffic Stop's Extension

Whether the traffic stop was unconstitutionally extended in this case is a harder question. Fourth Amendment search and seizure analysis unfurls chronologically, and "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* Traffic stops are analyzed under the *Terry v. Ohio* framework because they are "more akin to an investigative detention . . . than a custodial arrest." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). "To qualify as reasonable seizures under the Fourth Amendment, *Terry* detentions must be 'limited in [both] scope and duration.'" *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). In scope, the investigative methods police officers employ "should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time"; in

duration, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Cochrane*, 702 F.3d 334, 340 (6th Cir. 2012) (quoting *Royer*, 460 U.S. at 500).

Lott challenges the seizure's duration. A seizure can be extended if "something happened *during the stop* to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) (quoting *Davis*, 430 F.3d at 353). But nervous behavior alone is legally insufficient to establish such reasonable suspicion. *United States v. Pacheco*, 841 F.3d 384, 393 (6th Cir. 2016). It is uncontested that Lott's admission to having marijuana in his car provided reasonable suspicion to the officers to prolong the stop. Lott's argument is that the existence of a gap in time following completion of the traffic stop but prior to his admission of marijuana possession shows that the search occurred during an unconstitutionally-prolonged detention and that the evidence it revealed is fruit of the poisonous tree.

In *Rodriguez v. United States*, the Supreme Court explained that the permissible duration of a roadside seizure is tightly tethered to the mission of the traffic stop. 575 U.S. 348, 354 (2015). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, *Caballes*, 543 U.S. at 407, and attend to related safety concerns." *Id.* "'Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed;' whichever comes first." *Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir. 2020) (quoting *Rodriguez*, 575 U.S. at 354). "This is a bright-line rule." *Id.* *Rodriguez* concerned a traffic stop prolonged to accommodate a dog sniff. The Court held that "[t]he critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff 'prolongs'—*i.e.*, adds time to—'the stop.'" *Rodriguez*, 575 U.S. at 357.

The first step of this analysis is to identify the tasks incident to the traffic stop. *Rodriguez* provides guidance.

> Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants

against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Id.* at 355 (quoting *Caballes*, 543 U.S. at 408) (citations omitted). Even minor police actions aimed at "detecting evidence of ordinary criminal wrongdoing" or any purpose beyond addressing the traffic infraction are not tasks incident to the stop. *Id.* (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 40-41 (2000)) (brackets omitted). A dog-sniff, safety measures taken to facilitate a different investigation, and unrelated questioning, for example, are not tasks incident to the initial stop. *Rodriguez*, 575 U.S. at 355-57. A traffic stop cannot be extended to accommodate such unrelated tasks absent independent reasonable suspicion. Here, the marijuana admission must have occurred within the permissible duration of the stop for the subsequent search to be constitutional. *Id.* at 356-57.

This case hinges on the timing of the computerized warrant search, the last remaining task of the traffic stop. The parties agree that the other tasks incident to the traffic stop were completed. And King had already told Lott that he "wasn't going to issue a citation for the violation for traveling in the left lane." Prior to the marijuana admission, Lott's nervousness was all King had to go on and that was insufficient independent reasonable suspicion of criminal activity to prolong the stop. *Pacheco*, 841 F.3d at 393. To prevail, Lott needs to show that the warrant search was over—or that it should have been over—before he admitted to possessing marijuana. *Rodriguez*, 575 U.S. at 355-57; *see also Stepp*, 680 F.3d at 662 ("Because a crafty officer, knowing [she cannot prolong a completed traffic stop] may simply delay writing a ticket for the initial traffic violation until after she has satisfied herself that all of her hunches were unfounded, we also treat the unreasonable extension of a not-yet-completed traffic stop as a seizure . . . [and] evaluate [it] . . . considering the totality of the circumstances.")

The district court found that "[w]hile Trooper King was waiting for Lott's identification to run, he returned to Lott's car and asked him to exit the car." King then asked Lott a series of questions about criminal activity unrelated to the traffic stop. In the course of this questioning, Lott admitted to having marijuana in the car.

The magistrate judge found that "Trooper King had not received the results from the mobile data terminal before initiating the canine sniff." But at issue is not when an officer chooses to receive database results but whether the warrant search was over or should have been over. The record contains no information about when King expected the results of the warrant search—or reasonably should have. And while the timeline of the roadside encounter provided by the parties is imprecise (King estimated 5-10 minutes elapsed between the stop and the dog sniff), we know that, at most, two or three minutes elapsed between King inputting Lott's information into the warrant search and Lott's marijuana admission. There is no indication that King delayed his return to the patrol car beyond the first instance search results may have been returned. The record therefore provides no basis for concluding that the warrant search had finished by the time Lott admitted to possessing marijuana.

This case presents a compressed timeline and no evidence pertaining to the actual or reasonable duration of a mobile-data-terminal warrant search. Viewing the evidence in the light most favorable to the government, as we must, we conclude that it was not clear error for the district court to find that the marijuana admission occurred within the temporal scope of the tasks incident to the initial traffic stop.

### III. CONCLUSION

For the foregoing reasons we **AFFIRM** the district court's denial of Lott's suppression motion.