*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

PAUL LAMOUNT GOREE,

        Defendant-Appellee.

UNPUBLISHED
September 22, 2022

No. 357302
Wayne Circuit Court
LC No. 18-009718-01-FH

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

The prosecution appeals as of right the order dismissing the charges against defendant of possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*); possession of the controlled substance Alprazolam, MCL 333.7403(2)(b); and possession of marijuana, MCL 333.7403(2)(d). The issue in this appeal is whether the trial court erred in granting defendant's motion to suppress evidence seized during a search of the vehicle in which defendant was a passenger. The prosecution also disputes the trial court's order requiring the return of civil forfeiture funds to defendant. We reverse and remand for further proceedings.

## I. BACKGROUND

Dearborn Heights Police Department Officer Jacob Esposito executed a traffic stop of the vehicle in which defendant was a passenger after observing the vehicle's license plate was unlit. According to Officer Esposito, the vehicle stopped within a reasonable amount of time, and there was no reason to suspect the vehicle's occupants possessed any illegal substances.

After verifying that the vehicle and the driver were properly licensed and insured, Officer Esposito returned to the vehicle. Before releasing the vehicle, however, Officer Esposito observed that the driver continued to appear "nervous" and "fidgety," so Officer Esposito asked the driver to step out of the vehicle. Officer Esposito then observed defendant make a "furtive gesture" to the floor of the vehicle, and Officer Esposito thought defendant, too, appeared "a little nervous." Defendant was also ordered from the vehicle. As defendant exited the vehicle, Officer Esposito smelled marijuana and noticed a small orange pill on the passenger seat where defendant was sitting. Officer Esposito searched the vehicle where illegal substances were discovered.

-1-

Defendant moved the trial court to dismiss, arguing Officer Esposito illegally prolonged the traffic stop and, therefore, the evidence obtained as a result of the stop should be suppressed. The trial court agreed, finding that the search and seizure were unreasonable. As a result of this ruling, defendant moved to dismiss the charges, which the trial court granted. Defendant moved for the return of $554 seized along with the substances, which the trial court also granted. This appeal followed.

## II. SUPPRESSION OF THE EVIDENCE

### A. PRESERVATION AND STANDARD OF REVIEW

Generally, an issue must be raised in the trial court to preserve it for appellate review. *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). The prosecution presents several arguments contesting the trial court's order suppressing the evidence—some of which are unpreserved for our review because they were not presented in the trial court. These unpreserved arguments include the prosecution's contention defendant lacks standing to challenge the search of the subject vehicle, and that Officer Esposito's search was reasonable under the search incident to lawful arrest exception to the warrant requirement. The prosecution's other arguments contesting the suppression of the evidence are preserved because some variation of these arguments was presented to the trial court.

This Court reviews de novo a trial court's decision on a motion to suppress. *People v Henry (After Remand)*, 305 Mich App 127, 137; 854 NW2d 114 (2014). With respect to the prosecution's preserved arguments, this Court reviews for clear error the trial court's factual findings as to a motion to suppress. *People v Hrlic*, 277 Mich App 260, 262-263; 744 NW2d 221 (2007). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016). The prosecution's unpreserved arguments are reviewed for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* (quotation marks and citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019) (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants

shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[1] [US Const, Am IV (footnote added).]

"[T]he 'touchstone of the Fourth Amendment is reasonableness.' " *People v Williams*, 472 Mich 308, 314; 696 NW2d 636 (2005), quoting *Ohio v Robinette*, 519 US 33, 39; 117 S Ct 417; 136 L Ed 2d 347 (1996). "Reasonableness is measured by examining the totality of the circumstances. Because of endless variations in the facts and circumstances implicating the Fourth Amendment, reasonableness is a fact-intensive inquiry that does not lend itself to resolution through the application of bright-line rules." *Williams*, 472 Mich at 314 (quotation marks and citations omitted). "A warrantless search and seizure is unreasonable per se and violates the Fourth Amendment of the United States." *People v Reed*, 393 Mich 342, 362; 224 NW2d 867 (1975).

Under the exclusionary rule, evidence obtained as a result of an illegal search or seizure is generally regarded as "fruit of the poisonous tree" and will be excluded in the case against the defendant. *People v Mahdi*, 317 Mich App 446, 470; 894 NW2d 732 (2016). "The exclusionary rule is a judicially created doctrine intended to compel compliance with the right of persons to be free from unreasonable searches and seizures." *People v Maggit*, 319 Mich App 675, 693-694; 903 NW2d 868 (2017). This is "a harsh remedy designed to sanction and deter police misconduct where it has resulted in a violation of constitutional rights and should be used only as a last resort." *People v Corr*, 287 Mich App 499, 508; 788 NW2d 860 (2010) (quotation marks and citation omitted). The exclusionary rule is designed to deter future Fourth Amendment violations by law enforcement. *People v Hill*, 299 Mich App 402, 412; 829 NW2d 908 (2013), quoting *Davis v United States*, 564 US 229, 236-237; 131 S Ct 2419; 180 L Ed 2d 285 (2011).

A traffic stop is considered a seizure for purposes of the Fourth Amendment. *People v Simmons*, 316 Mich App 322, 326; 894 NW2d 86 (2016) ("[S]topping a vehicle and detaining the occupants amounts to a seizure."); *Brendlin v California*, 551 US 249, 256-257; 127 S Ct 2400; 168 L Ed 2d 132 (2007) (A passenger was seized for purposes of the Fourth Amendment because a reasonable person in the passenger's position would not feel free to terminate the encounter and leave.). An officer may stop a vehicle so long as the officer has probable cause to believe a violation of traffic laws has occurred. *People v Davis*, 250 Mich App 357, 363; 649 NW2d 94 (2002). After stopping the vehicle, the officer may detain the vehicle long enough to run a Law Enforcement Information Network ("LEIN") check, *id*. at 364-368, and to ask reasonable

---

[1] Similarly, the Michigan Constitution states:

The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state. [Const 1963, art 1, § 11.]

questions concerning the alleged traffic violation, with due concern for the safety of the encounter. *Williams*, 472 Mich at 315. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v United States*, 575 US 348, 354; 135 S Ct 1609; 191 L Ed 2d 492 (2015). However, "when a traffic stop reveals a new set of circumstances, an officer is justified in extending the detention long enough to resolve the suspicion raised." *Williams*, 472 Mich at 315.

The trial court ruled that Officer Esposito did not have probable cause to search the passenger side of the vehicle because the officer testified that defendant only made a "furtive gesture," and did not indicate anything else of concern. But Officer Esposito's testimony, which was unrefuted, was that the driver of the vehicle appeared nervous and fidgety during the entirety of the stop. Under *Pennsylvania v Mimms*, 434 US 106; 98 S Ct 130; 43 L Ed 2d 331 (1977) and its progeny, Officer Esposito did not violate the Fourth Amendment by ordering the driver and defendant out of the vehicle.

*Mimms* held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Id.*, 434 US at 111 n 6. *Mimms* established a "bright line" rule. *Maryland v Wilson*, 519 US 408, 413 n 1; 117 S Ct 882; 137 L Ed 2d 41 (1997). This bright-line rule was summarized by then-Judge Kavanaugh in *United States v Bullock*, 379 US App DC 114, 117; 510 F3d 342 (2007):

> The bright-line rule of *Mimms* means that 'a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle.' *Wilson*, 519 US at 410. The Supreme Court later extended the bright-line rule to passengers, holding that 'an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.' *Id*. at 415. As the Supreme Court has explained, the risk of harm to the police when stopping a car ' "is minimized if the officers routinely exercise unquestioned command of the situation." ' *Brendlin v California*, 551 US 249; 127 S Ct 2400, 2407; 168 L Ed 2d 132 (2007) (quoting *Wilson*, 519 US at 414).

Thus, it is not violative of the Fourth Amendment for an officer to ask the occupants of a vehicle to exit the vehicle prior to the completion of the traffic stop.

It is equally well-settled that a traffic stop is not over until the officer completes his investigation and releases the driver to leave. *Arizona v Johnson*, 555 US 323, 333; 129 S Ct 781; 172 L Ed 2d 694 (2009) ("Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave."). See also, *Bullock*, 379 US App DC at 348 n 1 (noting that "the stop would not have terminated until, at a minimum, Officer Jackson issued citations for Bullock's traffic violations or decided to let Bullock depart"), and *United States v Lott*, 954 F3d 919, 923-924 (CA 6, 2020). This rule must, of course, be understood in light of *Rodriguez*, where the Court held that the constitutionally tolerable length of a traffic stop is determined by when the mission to complete the traffic stop ends or reasonably should have ended. *Rodriguez*, 575 US at 350-351 ("We hold that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore,

-4-

'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation").

But *Rodriguez* did not modify the *Mimms* rule; it instead just reaffirmed the principle that a traffic stop ends, absent reasonable suspicion to commence a new investigation into other criminal activity, once a reasonable time has passed to allow the officer to investigate the traffic issue and ensure safety during the encounter. *Id*., at 354-356. This was the recent conclusion of the Wisconsin Supreme Court:

> Brown argues *Rodriguez* narrowed the per se rule of *Mimms* to allow removal from a vehicle only if attendant to the mission of the stop. Not quite. With respect to *Mimms*, *Rodriguez* said only that a dog sniff did not serve the same 'highway and officer safety ... interests' as those justifying ordering the driver to exit the vehicle, while emphasizing that the officer safety interest 'stems from the mission of the stop itself.' *Rodriguez*, 575 US at 356-57. As Brown conceded at oral argument, issuing a traffic ticket is part of the traffic stop. At the time Deering directed Brown to exit the vehicle, Deering still had the ticket and Brown's driver's license in his possession, leaving part of the traffic stop's mission uncompleted. See *State v Floyd*, 377 Wis 2d 394; 2017 WI 78; 898 NW2d 560 (2017) ('Until [drafting the tickets and explaining them to the driver] is done, and so long as [law enforcement] does not unnecessarily delay the process, the permissible duration of the traffic stop has not elapsed.' (citing *Rodriguez*, 575 US at 354-55)). Finally, Brown argues the stop 'reasonably should have been completed' because Deering had completed writing the ticket, so all that remained was handing the ticket to Brown and ending the seizure. We rejected this argument in *Floyd* and have no reason to reconsider it. *Id*. Because the mission of the stop continued, officer safety remained a viable concern and the per se rule of *Mimms* fully applies. [*State v Brown*, 392 Wis 2d 454, 470; 2020 WI 63; 945 NW2d 584 (2020)].

Accord: *Hill v State*, 360 Ga App 683, 688; 859 SE2d 891 (2021) (Recognizing that the officer did not exceed his authority by asking the defendant to exit the vehicle after completing the ticket paperwork and returning to defendant's vehicle), *State v Pylican*, 167 Idaho 745, 754; 477 P3d 180 (2020) (Concluding that *Rodriguez* did not abrogate *Mimms*; "Instead, *Rodriguez* stands for the proposition that the underlying safety concerns which justify exit orders do not extend to general criminal investigations that are undertaken when the purpose of the lawful stop has been abandoned"), and *United States v Washington*, 385 US App DC 144, 147-149; 559 F3d 573 (2009).

Here, Officer Esposito had completed the check of the driver's credentials and was returning to the car to hand the papers back to the driver. When he returned to the vehicle Officer Esposito noticed that the driver continued to appear nervous and fidgety, and ordered him out of the car.[2] It was at that point that the officer saw defendant make the furtive gesture while the driver

---

[2] Officer Esposito could not recall whether he handed back the driver's information prior to asking him to exit the vehicle, while defendant testified that the driver was asked out of the vehicle before initially providing Officer Esposito with that paperwork. In the trial court's decision it noted that

was exiting the vehicle. Thus, the stop was nearing its end but was in no way complete when the gesture (and the driver's nervousness/fidgeting) was seen.[3] At that point, under *Mimms* and its progeny, Officer Esposito could order all occupants out of the vehicle to ensure officer safety.

Although case law is fairly consistent in holding that nervousness alone does not provide an officer with reasonable suspicion that criminal activity is afoot (essentially on the ground that most all motorists are nervous during a traffic stop), see, e.g., *United States v Blair*, 524 F3d 740, 753 (CA 6, 2008),[4] Officer Esposito did not need reasonable suspicion to ask both defendant and the driver to exit the vehicle. Instead, the objective need for officer safety—particularly when combined with the driver's nervousness/fidgeting and defendant's furtive motion made towards the vehicle floor—was enough to order them out. Importantly, the concern for officer safety is an objective one, and is not reliant on the officer himself testifying to that concern. See *United States v Goodwill*, 24 F3d 612, 615 (CA 7, 2022) ("A police officer can ask a driver to sit in the police car for the duration of a traffic stop without any particularized suspicion of dangerousness."). Indeed, in *Mimms* itself, the Court upheld an exit order where the officer "freely concede[d]" that he had "no reason to suspect foul play from the particular driver at the time of the stop . . ." *Mimms*, 434 US at 109.

It is true that Officer Esposito could have simply handed back the documents and let the vehicle leave. But his decision not to do so did not prolong the traffic stop, at least not in the sense

---

the driver was asked out of the vehicle prior to being given the ticket. In any event, it appears undisputed that Officer Esposito had not released the driver at the time he asked him to exit the vehicle.

[3] Our dissenting colleague asserts that our conclusion that the stop was not over until Officer Esposito handed back the paperwork to the driver constitutes our own fact-finding. Not true. Instead, we exclusively rely upon the cited caselaw indicating that a stop is not over until the officer returns the documents and releases the driver. See *Arizona*, 555 US at 333; *Bullock*, 379 US App DC at 348 n1; *Lott*, 954 F3d at 923-924; *Brown*, 392 Wis 2d at 470. We agree with the dissent that an officer cannot unreasonably extend the stop without running afoul of the Fourth Amendment (absent evidence of a new crime), but Officer Esposito did no such thing. He was simply returning to the car to hand the documents to the driver when he saw the continued nervousness and asked him out of the car, where he then saw defendant make a furtive gesture. This raised an officer safety concern, and as *Mimms* recognized, "[e]stablishing a face-to-face confrontation diminishes the possibility, otherwise substantial, that the driver can make unobserved movements; this, in turn, reduces the likelihood that the officer will be the victim of an assault." *Mimms*, 434 US at 110.

[4] But see *United States v Edmonds*, 345 US App SC 131, 137; 240 F3d 55 (2001) (suspect reached under driver's seat and held that "this Court recognizes that 'furtive' gestures in response to the presence of the police can serve as the basis of an officer's reasonable suspicion") and *Washington*, 385 US App DC at 148 ("It is well settled that an individual's furtive movements may be grounds for reasonable suspicion and fear, justifying a *Terry* stop and search").

of the traffic stop turning into a new investigation.[5]  Instead, a legitimate and objective concern was presented by a driver who continued to be nervous and fidgety upon the officer's return to the vehicle.  Because the stop was not complete, Officer Esposito could order the driver out.  Ordering the driver out at this point did not change the course of the stop, nor did it extend it beyond the nonconstitutional concern of asking a driver to exit the vehicle. *Mimms*, 434 US at 111.  And, as the driver exited, defendant made a furtive gesture towards the floor.  Under *Mimms*, the officer was free to ask both persons out of the vehicle.  After that happened, there is no reasonable argument that the smell of marijuana and defendant's admission to possessing same without a lawful ability to do so, MCL 333.7403(2)(d), provided probable cause to arrest defendant and engage in a search incident to that arrest.[6]

For these reasons, we reverse the trial court order suppressing the evidence, and remand for further proceedings.  We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Christopher M. Murray

---

[5] It would not, for example, violate the Fourth Amendment for an officer to ask the driver to exit the vehicle to hand back the paperwork and any ticket or warning.  This holds true because, until a traffic stop is over, an officer is operating in a situation fraught with unknown or hidden dangers. *Mimms*, 434 US at 110-111; *Rodriguez*, 575 US at 356 ("Traffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions *in order to complete his mission safely*." (emphasis added) (citations omitted)).

[6] We decline to resolve whether the trial court had jurisdiction to return the civil forfeiture funds because the issue is not properly before this Court.  First, the question was not contained in the questions presented.  This Court has rejected consideration of issues not contained in the questions presented.  See *People v Albers*, 258 Mich App 578, 584; 672 NW2d 336 (2003) (declining to consider an argument not in the question presented).  Second, it does not appear the prosecution presented any evidence or argued that the trial court lacked jurisdiction.  The issue is not properly preserved.