RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0339p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 25-1051

ADAM DANIEL-DEJESUS SANTOS,

*Defendant-Appellant.*

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:24-cr-00078-1—Jane M. Beckering, District Judge.

Decided and Filed:  December 16, 2025

Before:  SUTTON, Chief Judge; MURPHY and BLOOMEKATZ, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  James Stevenson Fisher, Marcus Miller, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant.  John J. Schoettle, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

SUTTON, Chief Judge.  A Michigan State Trooper conducted a traffic stop for a vehicle with expired registration.  During the stop, the trooper learned that the passenger, Adam Santos, was a convicted felon known to be potentially armed and dangerous.  In the course of removing the driver and Santos from the car, the trooper found that Santos had a gun.  An indictment followed for unlawful possession of a gun by a felon.  Santos moved to suppress the gun as

evidence obtained in violation of his Fourth Amendment rights.  The district court denied the motion, and we affirm.

I.

On May 19, 2024, Trooper James Fabijancic pulled up behind a black Chevrolet.  The officer noticed that the vehicle had expired registration.  And he noticed that the passenger of the vehicle repeatedly turned in his seat to glance back at him.  The trooper turned on his lights and stopped the Chevrolet.

The trooper approached the vehicle and asked the driver for her license, registration, and proof of insurance, and asked Santos, the passenger, for his license as well.  Santos looked around his seat and under him—but not in the cross-body bag strung across his chest—and claimed that he could not find his license.  The trooper told the driver that he stopped her due to an expired vehicle registration.  He again asked Santos for his license, and asked whether it could possibly be in the bag across his chest.  Santos said he could not find it but, in the process, provided his name and birthday.

The trooper returned to his vehicle and ran the driver's license details and Santos's information in the law enforcement information system.  The inquiry confirmed that the car's registration had expired.  And it revealed that Santos had convictions for assault with a dangerous weapon and armed robbery, and that he was still on probation.  The trooper then received an audible alert from the information system:  "26-year-old male, possibly armed, if arrested call dispatch."  R.60 at 72.  He called for backup.

The trooper returned to the vehicle and asked the driver to exit.  He led her to the back of the car and asked whether she had any weapons on her and whether he could frisk her.  She assented, and he frisked her.  He asked her, "there's no weapons or anything like that in the car?" R.32 at 6:42–44.  She shook her head no.  He said, "no drugs or anything like that?"  R.32 at 6:44–46.  She replied, no.  "[N]o heroin or meth or nothing like that?", he added.  R.32 at 6:47–49.  Again, she replied no.  He asked the driver whether he could search her vehicle.  She agreed, and he said that he would do so as soon as another trooper arrived and would ask Santos to step out while they did the search.  She said "okay."  R.32 at 6:58–7:01.  All of this lasted about forty

seconds.  He then showed her how to tell that her registration had expired on the rear license plate and explained how to renew it, recognizing that she was a first-time car owner.

The trooper told the driver to "hang tight" and asked Santos to step out of the vehicle. R.32 at 8:10–25.  He asked Santos whether he was on probation, which he confirmed.  He asked Santos whether he had any weapons on him.  Santos said no.  The trooper asked, "you don't mind if I check, do you?"  R.32 at 8:33–35.  Santos indicated with his head no.  The trooper stood behind Santos and frisked him.  During the frisk, the trooper shifted the bag across Santos's chest to his back.  With this contact, the trooper recognized a weight consistent with a gun.  He started to unzip the bag.  In the same moment, Santos attempted to break away, leading to a scuffle that ended with Santos on the ground.  The officer arrested Santos and found a gun in the bag.

A grand jury indicted Santos for unlawfully possessing a gun as a felon.  18 U.S.C. §§ 922(g)(1), 924(a)(8).  Santos moved to suppress the gun.  After a suppression hearing, the district court denied the motion.  The court sentenced him to 27 months.

## II.

In an appeal from a ruling on a motion to suppress evidence under the Fourth Amendment, we give fresh review to the district court's legal conclusions and clear-error review to its factual findings.  *United States v. Whitley*, 34 F.4th 522, 528 (6th Cir. 2022).  The benefit of any factual doubt runs in favor of the district court's ruling, whether for or against the suspect, in view of the court's ringside view of the evidence.  *Id.*

*Did the trooper unreasonably prolong the seizure*?  Santos claims that the trooper's questions of the driver outside the vehicle unreasonably prolonged the traffic stop, violating his Fourth Amendment rights.  A traffic stop must "last no longer than is necessary to effectuate th[e] purpose" of the stop.  *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quotation omitted) (prolonging search in order to permit a dog sniff).  Legitimate purposes include looking for a valid license and registration, checking for outstanding warrants, and "attend[ing] to related safety concerns."  *Id*. at 354–55.  While an officer may "conduct certain unrelated checks," he may not do so in a manner that "measurably extend[s] the duration of the stop."  *Id*. at 355

(quotation omitted). "Authority for the seizure [] ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354.

An officer may lawfully extend a stop when reasonable suspicion arises of wrongdoing or danger to the officer or others. While that requires more than a "hunch," it requires only "a minimal level of objective justification," *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000) (quotation omitted), when taking in the "whole picture" available to the officer, *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (quotation omitted). We focus on commonsense inferences rather than any "neat set of legal rules," *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996) (quotation omitted), and view the facts through a broad rather than a narrow lens, *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

The trooper did not violate Santos's Fourth Amendment rights. The expired tags gave the trooper probable cause to stop the vehicle in which Santos was a passenger. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The trooper lawfully requested the driver and Santos's licenses, *United States v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010), and asked limited "context-framing" questions about their activities and intended destination, *United States v. Williams*, 68 F.4th 304, 307 (6th Cir. 2023) (quotation omitted). His requests for the driver to step out of the car and for consent to frisk her likewise come within the settled boundaries of what officers may do during a stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (per curiam). The same is true of his request to ask Santos—known by then to be a felon and potentially armed and dangerous—to exit the car. *Maryland v. Wilson*, 519 U.S. 408, 414–15 (1997). It is not clear whether the trooper's questions of the driver outside the car measurably extended the duration of the stop. But either way, they were within the scope of the stop because they helped ensure officer safety. *See United States v. Taylor*, 60 F.4th 1233, 1239–40 (9th Cir. 2023); *United States v. Ross*, 151 F.4th 487, 494–95 (3rd Cir. 2023); *United States v. Buzzard*, 1 F.4th 198, 203–04 (4th Cir. 2021); *see also Ohio v. Robinette*, 519 U.S. 33, 35–36, 39 (1996). All of this occurred before his backup had arrived and before he had administered the traffic stop "enforcement action," which in this case consisted of a warning and instructions about registering a car. R.60 at 23.

Adding to the legitimacy of the officer's actions is the information he fairly and quickly obtained about Santos's status as a convicted felon who might be armed and dangerous. That is the kind of "safety concern[]" that allows an officer to proceed with caution. *Rodriguez*, 575 U.S. at 354. "Traffic stops are especially fraught with danger"—and still more so when a potentially armed individual accompanies the driver—allowing officers to "take certain negligibly burdensome precautions in order to complete [their] mission safely." *Id*. at 356 (quotation omitted). The trooper's actions fit that description. Santos was "possibly armed," R.60 at 72, prompting the trooper to take extra measures to ensure safety while outnumbered and on the side of a busy road. Bringing the driver to the back of the car allowed him to keep an eye on the car's occupant while conducting the enforcement action and retaining control. *Mimms*, 434 U.S. at 110–11. And his brief questions to the driver about contraband, taking all of forty seconds and following on the information that Santos might be armed, attempted to ensure that there were no additional considerations that could heighten danger while he administered his enforcement action. *See Robinette*, 519 U.S. at 35–36, 39; *see also Arizona v. Johnson*, 555 U.S. 323, 330–32 (2009).

A few other factors cement this conclusion. It's not just that Santos was a convicted felon who might be armed and dangerous. The trooper had already observed—and noted to the driver—that Santos had made several nervous glances at the trooper's vehicle before the stop, all before the trooper turned on his lights. *See United States v. Jordan*, 100 F.4th 714, 721 (6th Cir. 2024) (explaining that a passenger's nervousness carries more weight than a driver's nervousness in the context of reasonable suspicion). Santos's furtive behavior about his cross-body bag added another red, or at least maroon, flag to the encounter. When asked for his identification, Santos shifted in his seat looking around for his license. But he did not look in his bag draped across his chest, the first place one would expect him to look. *See United States v. Pacheco*, 841 F.3d 384, 393 (6th Cir. 2016) (finding a passenger's rummaging and glancing around an area "where firearms are often concealed" relevant to the reasonable suspicion analysis); *United States v. Peake-Wright*, 126 F.4th 432, 439 (6th Cir. 2025) (finding a passenger's "abrupt removal of his jacket, despite the freezing temperature," suggestive of the possibility that the jacket might contain contraband). That Santos had a violent criminal history and was on probation also supported the officer's actions, particularly because the history was "specific and

related to the same suspicions that the officer was developing." *United States v. Stepp*, 680 F.3d 651, 667 (6th Cir. 2012); *see Williams*, 68 F.4th at 308.

Viewing this constellation of circumstances in the light most favorable to the government, as we must, *Stepp*, 680 F.3d at 660, the trooper permissibly asked the driver forty seconds' worth of questions and did not unreasonably prolong the stop. The "collective weight" of these factors "justified" the trooper's conduct. *Pacheco*, 841 F.3d at 394.

Santos's counterarguments fail to persuade. *Whitley* is not to the contrary. Two officers saw a scale in a vehicle while conducting a traffic stop and "abandoned" the traffic stop in order to "investigate the scale." 34 F.4th at 528–30. The officers had no reason to suspect that the driver (or passenger) was "possibly armed," R.60 at 72, as the trooper did here, and the *Whitley* officers' intrusion was more than a "negligibly burdensome precaution" involving just one person in a car, *Rodriguez*, 575 U.S. at 356; *see Whitley*, 34 F.4th at 529. *Whitley* adds that officers may not remove passengers from a vehicle for reasons unrelated to the stop without independent reasonable suspicion. 34 F.4th at 530. But, for reasons related to effectuating the purpose of the stop, this officer had reasonable safety concerns to justify separating the driver from Santos. *Whitley*, at all events, is hardly the Rosetta Stone that Santos claims, as our court ultimately held that the reasonable suspicion the officers developed from the scale and other circumstances permitted them to extend the stop to allow a dog sniff, which produced evidence of drugs that we did not suppress. *Id*. at 534.

The same goes for *United States v. Moffitt*, 2025 WL 2702495 (6th Cir. Sept. 23, 2025). There, too, the officers had no reason to suspect the individuals involved possessed weapons. And we acknowledged that "[d]etermining whether the questions also fell outside the proper duration of the traffic stop requires a context-specific analysis." *Id*. at *6. A more fraught context here leads to a different analysis.

So too for *United States v. Lott*, 954 F.3d 919 (6th Cir. 2020). It says that "safety measures taken to facilitate a different investigation . . . are not tasks incident to the initial stop." *Id*. at 924. But the trooper's questions regarding whether the driver or Santos possessed weapons or whether there were weapons in the car related specifically to the safety of the stop at hand.

The same is true of the trooper's decision to ask the driver to exit the vehicle in order to talk to the driver away from Santos, whom the officer believed might be armed. Once the driver consented to the search of the vehicle, it was permissible for the officer to order Santos out of the car in order to conduct the search safely.

Santos maintains that the trooper's request to search the vehicle unreasonably extended the stop. But we have held that such a request on its own does not impermissibly extend a stop. *United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008); *see Robinette*, 519 U.S. at 35–36, 38–39. A request to search is itself a request to extend the stop that a driver may deny. *United States v. Salkil*, 10 F.4th 897, 899 (8th Cir. 2021); *United States v. Calvetti*, 836 F.3d 654, 672 (6th Cir. 2016) (Suhrheinrich, J. concurring). *Blair* held that the question "did not extend the stop beyond its permissible scope." 524 F.3d at 752.

Santos makes much of the trooper's retention of the driver's license throughout the stop and argues it coerced her consent to search the car. The district court ruled otherwise, finding the driver voluntarily consented to the search given the "totality of the circumstances," including the "polite and friendly" nature of the "ask." R.60 at 84. Santos offers no cases from this circuit for the proposition that retaining a driver's license throughout the completion of a valid traffic stop coerces her consent to a search. We have frequently upheld voluntary-consent findings even when the consent was given during an ongoing traffic stop. *United States v. Tellez*, 86 F.4th 1148, 1150, 1152 (6th Cir. 2023); *United States v. Wellman*, 185 F.3d 651, 657 (6th Cir. 1999). The Court has also rejected the argument that a stopped driver could not consent after the officer returned the license to the stopped driver. *See Robinette*, 519 U.S. at 35–36, 39–40.

*Did the trooper unreasonably search Santos*? The trooper lawfully asked Santos to step out from the car after receiving consent from the driver to search the car. *Wilson*, 519 U.S. at 410, 414–15. When law enforcement has reasonable suspicion that an individual may be "armed and dangerous, they may conduct a protective search for weapons" "of [the individual's] person." *Minnesota v. Dickerson*, 508 U.S. 366, 374 (1993); *see Terry v. Ohio*, 392 U.S. 1, 27 (1968). If, during the pat down, an officer feels the familiar shape or weight of a weapon, he has probable cause to seize the item. *Dickerson*, 508 U.S. at 375–76.

By this point in the encounter, the trooper already had reasonable suspicion that Santos had a weapon. That justified his request to frisk Santos. The frisk necessarily required the trooper to adjust the bag that Santos wore across his chest, at which point the trooper felt a weight consistent with that of the weapon. That provided probable cause to open the bag to remove the weapon.

Santos does not contest the district court's finding that the trooper was justified in opening the cross-body bag once he felt the weight of a weapon in it. What he does do is criticize the district court for failing to make any specific findings about the voluntariness of Santos's consent to the frisk. But it's not clear where this point takes Santos. No consent, as an initial matter, was needed in view of the reasonable suspicion the officer already had. Santos fails to explain, moreover, how his consent was involuntary.

Santos separately complains that he did not intend to give consent to search the bag and attempted to pull away, non-verbally retracting any consent, when he felt the trooper opening it. But, for reasons already given, the trooper had ample safety reasons for continuing to open the bag by then.

We affirm.